## United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 00-3230

_____

Minnesota Chapter of Associated    *
Builders and Contractors, Inc.,    *
a Minnesota corporation; North    *
Central Chapter of the American    *
Fire Sprinkler Association, an    *
unincorporated association; Allied    *
Mechanical Systems of Hutchinson,    *
Inc., a Minnesota corporation; Ebert    *
& Hinson Fire Protection, Inc.,    *
a Minnesota corporation; and General    *
Sprinkler Corporation, a South    *
Dakota corporation,    *
   *
     Plaintiffs-Appellees,    *
   *
   *
     v.    *    Appeal from the United States
   *    District Court for the
Minnesota Department of Public    *    District of Minnesota
Safety and Michael Jordan,    *
Commissioner of Public Safety,    *
   *
     Defendants-Appellees,    *
   *
Sprinkler Fitters Local 417,    *
   *
     Intervenor-Appellant    *
   *
   *
   *

Building and Construction Trades          *
Department, AFL-CIO,                       *
                                           *
        Amicus Curiae                      *


                          _____

                       Submitted: May 17, 2001

                        Filed: October 5, 2001
                          _____

Before MORRIS SHEPPARD ARNOLD and BYE, Circuit Judges, and GAITAN,[1]
District Judge.


GAITAN, District Judge


        This case presents the issue of whether portions of the Minnesota Sprinkler Fitter
statute and rules which require contractors to adopt approved apprenticeship programs
is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §
§ 1001, et seq. ("ERISA"). The district court held that the statute and rules were
preempted and issued a permanent injunction preventing enforcement of the
apprenticeship regulations. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and
28 U.S.C. § 1292(a)(1) and affirm.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the
Western District of Missouri, sitting by designation.

# I. BACKGROUND

In 1992, the Minnesota legislature passed the Sprinkler Fitter Licensing Law which comprehensively regulated the fire protection industry in Minnesota. <u>See</u>, 1992 Minnesota Laws, Chap. 508. The statute was codified as Minn.Stat.Chap. 299M. Section 299M.04 gave statutory authority to the Minnesota Department of Public Safety to promulgate rules governing Chap. 299M. One of the statutory provisions of the Sprinkler Fitter Licensing statute was the requirement that only licensed journeymen and registered apprentices could perform fire protection work. The law required apprentices to be actively enrolled in a registered apprenticeship program and registered with a federal or state agency that approved apprenticeship programs.

In 1994, the Minnesota Department of Public Safety issued rules putting into effect the statutory provisions of Minn.Stat.Chap. 229M. The rules defined "federal approval agency" as "the United States Department of Labor, Bureau of Apprenticeship and Training" and the "state approval agency" was defined as "the Department of Labor and Industry or a state agency in Minnesota or another state if the commissioner determines that the state agency approves training programs and monitors apprentice or trainee progress in a manner comparable to that done by the Department of Labor and Industry or by the United States Department of Labor, Bureau of Apprenticeship and Training." Minn.R. 7512.0100, subps. 7, 14.

The statute and rules require all Minnesota sprinkler contractors to maintain an apprenticeship program approved by the Minnesota Department of Labor and Industry and to register all of their apprentices in the approved apprenticeship program.

Minn.R. 7512.0100, subps. 1,7,14; Minn. R.7512.0900, subp. 3; Minn.R. 7512.2100. Contractors without an approved program could not employ apprentices in the state.

To obtain an approved apprenticeship program, contractors had to meet a number of requirements: 1) the apprenticeship program had to be of the same duration as the majority of apprenticeship programs on file with the Department of Labor and Industry; Minn. Stat. § 178.06; Minn. R. 5200.0320, subp. 1; Minn.R. 5200.0390, subp. 1; 2) the apprentice wage structure had to be based on the prevailing wage for sprinkler fitters in the county in which the contractor was headquartered, Minn.R. 5200.0390, subp. 2; 3) contractors had to adopt the same graduated pay scale for apprentices as was found in the majority of apprenticeship programs on file with the Department of Labor and Industry, Minn.R. 5200.0320, subp. 10; Minn.R. 5200.0390, subp. 1; 4) apprenticeship programs had to provide for at least 144 hours of "related" or classroom instruction per year, Minn. Stat. § 178.07, Minn.R. 5200.0320, subp. 11; and 5) contractors had to register apprentices in accordance with the journeyman-apprentice ratios established by the Department of Labor and Industry[2]

In 1994, plaintiffs, the Minnesota Chapter of Associated Builders and Contractors ("ABC") and certain affiliated contractors, brought suit in the district court seeking to enjoin portions of the Minnesota statute and rules governing the apprenticeship programs. The parties stipulated to a temporary injunction barring enforcement of the statute and rules while the court determined the issues raised in the complaint. In early 1995, the parties filed cross motions for summary judgment and in March 1996, the district court issued an order finding that the statute and rules were preempted by ERISA and permanently enjoined the State Department of Public Safety

---

[2] An employer may register one apprentice sprinkler fitter for the first journeyman sprinkler fitter employed, and one apprentice sprinkler fitter for each three journeyman sprinkler fitters employed thereafter.

from enforcing those provisions of the statute and rules. That order and permanent injunction were not appealed and remain in effect. The statute and rules have not been repealed or changed since the injunction was issued.

On February 1, 2000, Sprinkler Fitters Local 417, a labor organization representing journeyman and registered apprentice sprinkler fitters in the State of Minnesota, moved to intervene in the case and to have the injunction dissolved due to an intervening change in the law. The union claimed that the Supreme Court's decision in California Div. of Labor Standards Enforcement v. Dillingham Construction, N.A. Inc., 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), made the injunction "inappropriate," in light of new criteria established by the Court for determining whether ERISA preempted state law. ABC opposed the motion. The district court granted the union's motion to intervene, but denied the motion to dissolve the injunction. The union filed the instant appeal.

The district court in its order denying the motion to dissolve the injunction noted that the Supreme Court in Dillingham recognized a distinction between laws which created incentives for the adoption of an approved apprenticeship plans or created indirect economic incentives, and those laws such as the Minnesota statute and rules, which required the adoption of an approved apprenticeship plans. The district court also found that the Supreme Court had not specifically overruled its earlier ERISA precedents, including those on which Boise Cascade Co. v. Peterson, 939 F.2d 632 (8th Cir. 1991), cert. denied, 505 U.S. 1213 (1992) were based. The district court thus found that Minnesota's statute and rules "related to" an ERISA plan under the "connection with" prong and were therefore preempted by ERISA.

The issue of whether the injunction issued by the district court has any continued legal basis is purely a question of law which we review *de novo*.

-5-

## II. DISCUSSION

## A. ERISA Preemption

"ERISA, codified at 29 U.S.C. § 1001-1461 (1994) 'is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans.'" Wilson v. Zoellner, 114 F.3d 713, 715 (8th Cir. 1997), quoting, Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc., 947 F.2d 1341, 1343 n.1 (8th Cir. 1991), cert. denied, 504 U.S. 957 (1992). "It was enacted in response to growing concerns about 'the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds.'" Carpenters Local Union No. 26 v. U.S. Fidelity & Guar.Co., 215 F.3d 136, 139 (1stCir. 2000), quoting, Massachusetts v. Morash, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989).

"To meet the goals of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans, Congress included an express preemption clause in ERISA for the displacement of State action in the field of private employee benefit programs." Wilson, 114 F.3d at 715-16 (internal citations and quotations omitted). In New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the Court stated:

> [w]e have found that in passing § 514(a), Congress intended 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . ., [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'

Id. at 656, citing, <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990).

ERISA's preemption clause states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. . . .

29 U.S.C. § 1144(a), § 514(a). "Thus, when state-law claims 'relate-to' ERISA plans, those claims are transmuted into ERISA claims." <u>Carpenters Local Union No. 26</u>, 215 F.3d at 139.

**B. The Dillingham Decision.**

Local 417 notes that the issue of whether ERISA preempts a particular state law has caused a great deal of confusion over the last twenty years. Local 417 argues that because the Supreme Court in <u>Dillingham</u> significantly changed the way in which preemption questions are analyzed, there is no longer any basis for the injunction and it should be dissolved.

In <u>Carpenters Local Union No. 26</u>, the Court explained:

> As the language of section 1144(a) makes plain, the incidence of ERISA preemption turns on the parameters of the phrase "relate to." <u>See</u> <u>California Div. of Labor Standards Enforcement v. Dillingham Constr.</u>,

519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). That locution is not self-defining, and the Justices have been at least mildly schizophrenic in mapping its contours. The Court initially glossed the phrase by portraying the scope of ERISA preemption as "deliberately expansive." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). As time passed, it grew more guarded, emphasizing the "starting presumption that Congress does not intend to supplant state law," New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); accord, De Buono v. NYSA-ILA Medical & Clinical Services Fund, 520 U.S. 806, 813, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997), and warning that, unless congressional intent to preempt clearly appears, ERISA will not be deemed to supplant state law in areas traditionally regulated by the states, see Dillingham, 519 U.S. at 325, 117 S.Ct. 832; Travelers, 514 U.S. at 655, 115 S.Ct. 1671.

Importantly, these variations in emphasis have led the Court to conclude in recent years that the phrase "relate to," as used in ERISA's preemption provision, cannot be read literally. . . . To scale the phrase down to size, the Court has devised a disjunctive test: "A law relate[s] to a covered employee benefit plan for purposes of § 514(a) if it [1] has a connection with or [2] a reference to such a plan." Dillingham, 519 U.S. at 324, 117 S.Ct. 832 (citations and internal quotations omitted) (alternations in original). . . .

Travelers plainly signaled a significant analytic shift in regard to the "connection with" portion of the ERISA preemption inquiry, abandoning strict textualism in favor of a more nuanced approach:

> For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections. We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.

<u>Carpenters Local Union No. 26</u>, 215 F.3d at 139-140, quoting, <u>Travelers</u>, 514 U.S. at 656, 115 S.Ct. 1671; <u>accord</u>, <u>Dillingham</u>, 519 U.S. at 324, 117 S.Ct. 832.

Local 417 states that in light of this shift in the law, courts must now take a more practical view and look at the scope of the state statutes that Congress intended would survive ERISA and not presume that the statutes were preempted unless there was a clear indication. ERISA is concerned with the segregation and investment of funds and ensuring that funds are not depleted and that fiduciaries utilize the funds in the manner in which they were intended. Local 417 states that ERISA is concerned that funds set aside for apprenticeship and training programs are properly handled and accounted for, but is not concerned with the substantive requirements for these apprenticeship and training programs. The union argues that ERISA places no substantive regulations on any apprentice program and states that if Congress had intended that states would no longer be able to place any substantive requirement on apprentices it certainly would have stated so. As such Local 417 states there is no mention in the statute or its legislative history of an intention to supersede all state regulation of apprentices. The union asserts that state regulation of apprenticeship standards is pervasive and was pervasive when ERISA was passed. In light of this, the union states that there is no mention by Congress of its attempt to preempt state regulation of substantive apprenticeship standards. Local 417 argues that this is persuasive evidence that Congress did not intend to preempt state laws regulating apprenticeship standards.

In <u>Dillingham</u>, the Supreme Court considered whether California's prevailing wage law was "related to" an employee benefit plan and thus preempted under ERISA. The Court found that it was not. In that case, California required contractors on public works projects to pay workers the prevailing wage in the project's location. Contractors could pay lower wages to apprentices who were participating in an approved apprenticeship program. However, if a contractor employed apprentices who were participating in apprenticeship programs which were not approved, they were

required to be paid the prevailing journeyman's wage. In considering whether the California statute had a "connection with" ERISA plans, the Court first noted that "apprenticeship standards and wages paid on state public works have long been regulated by the States." Id. at 330, 117 S.Ct. 840. The Court stated:

> That the States traditionally regulated these areas would not alone immunize their efforts; ERISA certainly contemplated the pre-emption of substantial areas of traditional state regulation. The wages to be paid on public works projects and the substantive standards to be applied to apprenticeship training programs are, however, quite remote from the areas with which ERISA is expressly concerned – reporting, disclosure, fiduciary responsibility, and the like . . . . Given the paucity of indication in ERISA and its legislative history of any intent on the part of Congress to pre-empt state apprenticeship training standards, or state prevailing wage laws that incorporate them, we are reluctant to alter our ordinary assumption that the historic police powers of the States are not to be superseded by the Federal Act. . . . Accordingly, as in Travelers, we address the substance of the California statute with the presumption that ERISA did not intend to supplant it.

Id., at 330-332, 117 S.Ct. 840-41 (internal quotations and citations omitted).

However, in analyzing the statute, the Supreme Court found:

> the apprenticeship portion of the prevailing wage statute does not bind ERISA plans to anything. No apprenticeship program is required by California law to meet California's standards. . . . If a contractor chooses to hire apprentices for a public works project, it need not hire them from an approved program (although if it does not, it must pay these apprentices journeyman wages). So apprenticeship programs that have not gained CAC approval may still supply public works contractors with apprentices. Unapproved apprenticeship programs also may supply apprentices to private contractors. The effect of [the California statute] on ERISA apprenticeship programs, therefore, is merely to provide some

-10-

measure of economic incentive to comport with the State's requirements, at least to the extent that those programs seek to provide apprentices who can work on public works projects at a lower wage.

Id. at 332, 117 S.Ct. 841.

The Court found that the California statute:

has the effect of encouraging apprenticeship programs – including ERISA plans – to meet the standards set out by California, but it has not been demonstrated here that the added inducement created by the wage break available on state public works projects is tantamount to a compulsion upon apprenticeship programs. . . . The prevailing wage statute alters the incentives, but does not dictate the choices, facing ERISA plans. In this regard, it is "no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate." Travelers, 514 U.S. at 668, 115 S.Ct. 1683. . . . We thus conclude that California's prevailing wage laws and apprenticeship standards do not have a "connection with," and therefore do not "relate to," ERISA plans.

Id. at 333-334, 117 S.Ct. 842.

Local 417 argues that the injunction issued by the district court should be dissolved because of the change signaled by the Supreme Court in Dillingham. The Union also argues that previous caselaw relied on by the district court when it issued the injunction, Boise Cascade Corp. v. Peterson, 939 F.2d 632 (8th Cir. 1991), cert. denied, 505 U.S. 1213 (1992) is no longer valid.[3] However, there are important

---

[3] The Court finds it unnecessary to determine whether Boise Cascade is still good law in this Circuit, because in that case, the state conceded that the apprenticeship programs were "employee benefit plans" as defined by ERISA. In the instant case, there has been no such concession and thus the Court does not look

distinctions between the California prevailing wage law and the Minnesota statute and rules, which do not mandate dissolution of the injunction.

The Minnesota rule relating to Contractor Operating Requirements states: "A fire protection contractor may not employ a person to perform fire protection-related work unless the person is a managing employee, certified journeyman, or registered apprentice." Minn.R. 7512.0900, Subp. 3. The Minnesota statute defines "apprentice sprinkler fitter" as: "a person, other than a fire protection contractor or journeyman sprinkler fitter, who is regularly engaged in learning the trade under the direct supervision of a licensed fire protection contractor or journeyman sprinkler fitter and is registered with a state or federal approval agency." Minn. Stat. 299M.01, Subd. 2. As previously noted, a state approval agency is defined as the Department of Labor and Industry or a state agency in Minnesota or another state if the Commission determines that the state agency approves training programs and monitors apprentice training progress in a manner comparable to that done by the Department of Labor and Industry or by the United States Department of Labor, Bureau of Apprenticeship and Training. A federal approval agency is defined as the Bureau of Apprenticeship and Training. Minn. R. 7512.0100, subps. 7, 14.

The Minnesota rules relating to apprenticeship programs and agreements states: "[t]he minimum training standards to be met in an apprenticeship agreement must be the standards for the apprenticeship program registered with the division but must be no less than the Minnesota minimum standards listed in part 5200.0320." Minn.R. 5200.0310. The Minnesota minimum standards state: "It must be the policy of the employer that all apprentices employed in a trade covered under parts 5200.0290 to 5200.0420 must be governed by the terms of these standards and by the Minnesota voluntary apprenticeship law . . . ." Minn. Rule 5200.0320 Subp. 2. The rules

to Boise Cascade as persuasive authority on this issue.

-12-

governing apprenticeship programs set out in very specific detail the length of an apprenticeship program, responsibilities of the apprentice, how an apprentice should be supervised, schedule of work processes, wage schedules, the amount of hours of related instruction required and the hours of work required. <u>See</u>, Minn. Rules 5200.0320, Subp. 1-15.

Thus, it is quite clear that the Minnesota statues and rules, unlike the California law, require apprentice programs to comply with the Minnesota specifications. The Minnesota statute and rules do more than merely encourage or provide economic incentives to contractors to hire apprentices who are registered in approved programs, the Minnesota statues and rules absolutely demand it. The statute unequivocally states that a "fire protection contractor may not employ a person to perform fire protection-related work unless the person is a managing employee, certified journeyman, or registered apprentice." Minn. Rule 7512.0900, subp 3. Thus, the Minnesota statute, unlike the California statute, "dictate[s] the choices facing ERISA plans." <u>Dillingham</u>, 519 U.S. at 334, 117 S.Ct. 842.

Local 417 argues that the statute does not require contractors to use apprentices and even if a contractor were to use apprentices, the statute does not prevent a contractor from using apprentices who are not part of an approved program, so long as they do not "install, connect, alter, repair, or add to a fire protection system." Local 417 argues that apprentices can learn by observation and by handing tools to a journeyman and by practicing at a training center. The union states that the statute simply gives a substantial economic advantage to contractors to have their apprenticeship programs approved and to register their apprentices in approved programs.

However, the Court does not find this argument persuasive.  The purpose of an apprenticeship program is to teach individuals through on-the-job training.  To say that an apprentice can still learn by simply observing and handing tools to a journeyman would turn an apprentice into simply a laborer and provide no useful instruction in how to actually install a fire protection system.  The statute does more than simply provide a powerful economic incentive, it prevents the use of apprentices who are not registered in approved programs.  It is for this reason that the Court finds that the Minnesota statute differs from the California statute in Dillingham and why the Court finds that the Supreme Court's decision does not necessitate dissolution of the injunction.

Appellant also argues that a recent decision by the Tenth Circuit in Willmar Elec. Service Inc. v. Cooke, 212 F.3d 533 (10th Cir.), cert. denied, 531 U.S. 979 (2000), indicates that the Minnesota statute is not preempted by ERISA.  In Willmar, the Court considered whether a Colorado statute which required supervision of apprentices in a one-to-one ratio by licensed journeymen was preempted by ERISA.  The Court found that the statute was not preempted stating:

> [t]here is no direct restraint in the Colorado law on the number of apprentices that may be trained.  Rather, the limit to which Willmar refers is the economic burden of requiring one-to-one supervision of apprentices.  The Supreme Court has recognized that laws of general applicability inevitably affect ERISA plans, sometimes by increasing costs, but that fact alone does not warrant a finding that Congress necessarily intended to displace regulation of an area traditionally regulated by the States.

Id. at 538.  The Court in Willmar found that the effect of the supervision ratio requirement was to indirectly increase the cost of the apprenticeship training and thus was directly analogous to the apprentice wage law in Dillingham.  The Court stated: "[i]n Dillingham, if the contractor chose to hire an apprentice from a non-approved

program, it was compelled by state law to pay journeyman's wages. In our view this is comparable to the manner in which the Colorado law affects the Willmar training program – it does not prevent training, but it increases the cost associated with doing so." Id. at 538, n. 3. This is the key distinction between the California and Colorado statutes and Minnesota's statute. Minnesota's statute acts to actually *prevent* training. A fire protection contractor working in Minnesota simply cannot hire an apprentice from an unapproved program to "install, connect, alter, repair, or add to a fire protection system." There is no provision whereby a contractor can pay a higher wage if it wishes to do so, or hire more journeymen to supervise an apprentice. The statute simply does not allow apprentices who are not registered or who are not registered in approved programs to work as apprentice sprinkler fitters.

Thus, because the Dillingham and Willmar decisions are distinguishable, the Court does not find that these decisions dictate dissolution of the injunction issued by the district court in 1996. However, because the Dillingham decision was handed down after the injunction was issued, the Court will consider whether the Minnesota statute and rules have a "connection with" an employee benefit plan under the criteria set out in Dillingham and other Eighth Circuit cases.

## C. The "Connection With" Test.

In applying § 1144, the Supreme Court has utilized a two-part test to determine whether a state law is preempted. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has [1] a connection with or [2] reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). See also, Dillingham, 519 U.S. at 324, 117 S.Ct. 837; De Buono, 520 U.S. at 813, 117 S.Ct. 1751.

In the district court, ABC did not challenge the union's argument that the statute was not preempted under the "refers to" prong of the Dillingham test, therefore the district court did not analyze this issue. Thus, our consideration will similarly be limited to analyzing whether the Minnesota statute and rules are preempted under the "connection with" prong of the test.

In Dillingham, the Court stated "to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, . . . as well as to the nature of the effect of the state law on ERISA plans." Id. at 325, 117 S.Ct. 838 (internal quotations and citations omitted).

In analyzing the effect of a state law on an ERISA plan, courts have considered a variety of factors:

> [1] whether the state law negates an ERISA plan provision, [2] whether the state law affects relations between primary ERISA entities, [3] whether the state law impacts the structure of ERISA plans, [4] whether the state law impacts the administration of ERISA plans, [5] whether the state law has an economic impact on ERISA plans, [6] whether preemption of the state law is consistent with other ERISA provisions, and [7] whether the state law is an exercise of traditional state power. Arkansas Blue Cross & Blue Shield v. St. Mary's Hospital, Inc., 947 F.2d 1341, 1344-45 (8th Cir. 1991)(citations omitted). In conducting this analysis, '[t]he court must still look to the totality of the state statute's impact on the [ERISA] plan-both how many of the factors favor preemption and how heavily each individual factor favors preemption are relevant.' Id. at 1345.

Prudential Ins. Co. of America v. Doe, 46 F.Supp.2d 925, 936 (E.D.Mo. 1999), quoting, Wilson, 114 F.3d at 717.

**1) Do the Minnesota Statute and Rules Negate a Plan Provision?**

ABC argues that the Minnesota statute and rules negate ERISA plan provisions by substituting the state's requirements for the range of terms found in ERISA apprenticeship plans. The union argues that nothing about the Minnesota statute negates any provision as to how an apprenticeship program will be funded, and therefore does not negate any ERISA plan provision. The Court finds that because the statute and rules dictate the terms of what constitutes an approved apprenticeship program, it negates plan provisions.

**2) Do the Minnesota Statute and Rules Affect Relations Between Primary ERISA Entities or Impact the Structure of ERISA Plans?**

"The primary ERISA entities include the employer, the plan, the plan fiduciaries, and the beneficiaries." <u>Wilson</u>, 114 F.3d at 718 (internal quotations and citation omitted). ABC argues that the statute and rules affect relations between the employer, (the plan administrator) and the employees, (the plan beneficiaries), by dictating how the employees must be trained and paid. The union argues that while the statute affects the substantive terms under which apprentices will be employed by the employer, the statute does not affect any provision with respect to whether a plan participant is entitled to received benefits. The Court finds that this is a distinction without a difference. This factor therefore weighs in favor of preemption.

**3) Will the Statute and Rules Impact the Administration of ERISA Plans?**

ABC argues that the statute impacts the administration of ERISA plans by requiring the employer to monitor its program to ensure that it complies with all of the state's requirements, i.e., required amount of on the job training, required wages and

raises at required intervals, required amount of related instruction and the requisite amount of supervision by journeymen. The union argues that there is no impact on the administration of ERISA plans because the employer may still fund an apprenticeship program either through a separate fund which is an ERISA plan or through its general assets. The Court finds that this factor also weighs in favor of preemption. By specifying all of the various requirements the statute and rules directly influence how the ERISA plans are administered. The Court finds it immaterial that an employer may still fund an apprenticeship program through a separate fund. Thus, the Court finds that this factor also weighs in favor of preemption.

### 4) Will the Minnesota Statute and Rules Have an Economic Impact on the Plan?

ABC argues that the statute and rules by dictating the duration of the plans, the wages that must be paid to apprentices, the amount of instruction and the ratio of journeyman to apprentices have a direct economic impact on the plan. Local 417 admits that the statute and rules have an indirect economic impact on ERISA plans because meeting the standards required for registration could increase the costs over plans that did not meet the required standards. However, Local 417 argues that while this factor may weigh in favor of preemption, it is not enough to require preemption. Because the requirements imposed by the statute and the rules would increase the costs of providing these programs, the Court finds that this factor also weighs in favor of preemption.

### 5) Is Preemption of the Minnesota Statute and Rules Consistent With Other ERISA Provisions?

ABC argues that preemption of the Minnesota statue and rules are consistent with other ERISA provisions because they do not impact any other ERISA provision

in any way. Local 417 argues that preemption of the statute is not consistent with other ERISA provisions because ERISA has nothing to say regarding substantive apprenticeship standards. The Court cannot say that preemption of the Minnesota statute is either strongly supported by or inconsistent with or contrary to any other provision of ERISA. Therefore, the Court finds this factor to be neutral.

**6) Whether the Minnesota Statute and Rules Are An Exercise of Traditional State Power.**

ABC states that the Minnesota statute and rules are not an exercise of traditional state power because the state has not mandated the adoption of approved apprenticeship programs in the past. ABC argues that the statute at issue goes far beyond any regulation of apprenticeship that has occurred in either Minnesota or any other state. Local 417 argues that apprenticeship regulation is a traditional exercise of state power. The Supreme Court noted in <u>Dillingham</u>, 519 U.S. at 330, 117 S.Ct. 840, that "apprenticeship standards and the wages paid on state public works have long been regulated by the States." Thus, the Court finds that this factor weighs against a finding of preemption.

Considering all of the above factors, the Court finds that the Minnesota statute and rules which dictate the standards for an approved apprenticeship training program have a sufficient connection to ERISA plans so as to require a finding of preemption.

**D. The Savings Clause[4].**

Although ERISA acts to preempt some state laws, it also contains a "savings clause" which exempts federal laws from ERISA preemption. The clause states:

> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in §§ 1031 and 1137(c) of this title) or any rule or regulation issued under any such law.

29 U.S.C. § 1144(d). Local 417 argues that this provision saves from preemption any state law that would otherwise be preempted if it simply recognizes federal standards as being applicable within the state. Local 417 states that because the Minnesota statute and rules allow for approval of apprenticeship programs by either the Minnesota Department of Labor and Industry or the United States Department of Labor, the statute thus does not mandate adherence to the state standards and thus is not preempted.

ABC states that the Fitzgerald Act, 29 U.S.C. §§ 50, et seq. provides for the voluntary adoption of apprenticeship programs by employers and others. ABC asserts that a state may choose to follow either the federal guidelines administered by the Bureau of Apprenticeship and Training or may develop its own guidelines through a state apprenticeship council. ABC argues that because Minnesota has developed its own guidelines through a state apprenticeship council, apprentice programs must be

---

[4]ABC states that this argument was never raised by the defendants in either the original action or by the union on intervention. However, in its Reply Brief, Local 417 states that this argument was presented to the district court during oral argument on the motion to dissolve the injunction. Therefore, the Court finds the issue properly raised and will address it.

approved by this body.  ABC states that the establishment of apprenticeship programs which comply with the Fitzgerald Act is entirely voluntary and an employer's failure to adopt an approved apprentice program or to register apprentices in the program has no bearing on a contractor's ability to employ apprentices within the state.  ABC states that preemption of the Minnesota statute and rules will have no impact upon the Fitzgerald Act because contractors will not be required to adopt apprenticeship programs that comply with the Fitzgerald Act, but they will not be prevented from doing so either.  Thus, because preemption would in no way impair enforcement of the Fitzgerald Act, ABC argues that the Savings Clause does not apply.

In reply, Local 417 argues that even though the Minnesota Department of Labor and Industry approves apprentice programs, the programs are approved for both federal and state purposes.  Thus, Local 417 argues, Minnesota's apprenticeship standards are federal as well as state standards. Local 417 states that these federal standards were established pursuant to the Fitzgerald Act and to say that a state may not rely on these standards interferes with the federal law.  Thus, the union argues the Savings Clause acts to prevent the preemption of Minnesota's statute and licensing laws.

In <u>Minnesota Chapter of Associated Builders & Contractors Inc. v. Minnesota Dept. of Labor & Industry</u>, 47 F.3d 975 (8th Cir. 1995), we considered whether ERISA preempted the apprenticeship portion of Minnesota's Prevailing Wage Law.  The Prevailing Wage Law specifically exempted apprenticeship programs from having to pay the prevailing wage, if the programs had received either state or federal approval.  The district court in that case found that although the apprenticeship program was an ERISA plan, the apprenticeship exemption provisions of the statute were not preempted because preemption would have impaired the purposes of the Fitzgerald Act.  <u>Id</u>. at 980.  In reaching this determination, we distinguished the case of <u>Electrical Joint Apprenticeship Committee v. MacDonald</u>, 949 F.2d 270 (9th Cir. 1991), <u>cert. denied</u>, 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 869 (1992).  In that case the court found

preempted an administrative application of the prevailing wage law exemption for apprentices because it required the apprentice programs to "comply with the standards of the State Committee, independent and apart from the regulation authorized and provided for by the Fitzgerald Act and its accompanying regulations." Id. at 274. We determined in Minnesota Chapter of Associated Builders & Contractors, that the Minnesota statue was different "[b]ecause Minnesota's apprenticeship exemption allows approval by either the state or federal agency and because it is essential to any apprenticeship program that an employer be allowed to pay lesser wages to apprentices in training, Minnesota's exemption is saved under ERISA's savings clause. 29 U.S.C. § 1144(d)." Id. at 981.

In the instant case, the rules state that an apprentice may be registered with either a state or federal approval agency. Minn. Rule 7512.2100, subp. 2C.  However, the Department of Labor and Industry Rules relating to apprenticeship programs make no reference to approval by a federal agency, instead stating under Minimum Training Standards: "[t]he minimum training standards to be met in an apprenticeship agreement must be the standards for the apprenticeship program registered with the division but must be no less than the Minnesota minimum standards listed in part 5200.0320." Minn. R. 5200.0310. Further the Minnesota Minimum Training Standards state: "It must be the policy of the employer that all apprentices employed in a trade covered under parts 5200.0290 to 5200.0420 be governed by the terms of these standards and by the Minnesota voluntary apprenticeship law . . ."  Minn. Rule 5200.0320, subp. 2. The rules further provide that "[a]ll apprenticeship agreements must be submitted to the Division of Voluntary Apprenticeship for approval." Minn. Rule 5200.0340.

These rules dictate that an apprentice program follow the standards established by the State of Minnesota and do not offer the option of having an apprenticeship program which only meets federal standards. Thus, the Court determines that because the Minnesota statute and rules do not offer the choice of compliance with either  state

or federal standards, but instead mandate adherence to the state standards, they are preempted under ERISA. Further, the Court finds that preemption of the statute and rules will not "alter, amend, modify, invalidate, impair, or supersede" the Fitzgerald Act, because contractors may still adopt voluntary apprenticeship programs which follow the standards set forth by the federal government. Therefore, the Court finds that the Minnesota statute and rules are not saved from preemption by ERISA's Savings Clause.

## III. CONCLUSION

Accordingly, for the foregoing reasons, we affirm the judgment of the District Court.

BYE, Circuit Judge, dissenting.

I disagree with the majority's conclusion that ERISA preempts the Minnesota Sprinkler Fitter statute and concomitant regulations. I believe that conclusion reflects a more expansive view of ERISA preemption than that expressed by the Supreme Court in California Div. of Labor Standards Enforcement v. Dillingham Const., 519 U.S. 316 (1997), and other recent decisions.

We are dealing with a matter traditionally regulated by the States, where we start with the presumption that ERISA does not preempt the state law. Dillingham, 519 U.S. at 330-32. In areas of traditional state regulation, we must differentiate between a state law that dictates choices faced by ERISA plans when administering the funding or provision of benefits, and a state law that dictates substantive safety standards applicable to ERISA and non-ERISA programs alike. I believe that Dillingham, as well

as several other recent Supreme Court decisions, instruct us that a state law of the former type is preempted, but the latter type is not. Compare Egelhoff v. Egelhoff, 121 S.Ct. 1322, 1329 (2001) (finding preemption where the state law "does dictate the choices facing ERISA plans *with respect to matters of plan administration*.") (emphasis added) (internal quotations omitted), with De Buono v. NYSA-ILA Med. & Clinical Serv. Fund, 520 U.S. 806, 815-16 (1997) (finding no preemption where the state law "impose[d] some burdens on the administration of ERISA plans" but dictated that both ERISA and non-ERISA owned or operated hospitals pay a tax, and therefore functioned as a law of general applicability irrespective of the existence of an ERISA plan), and New York State Conf. of Blue Cross & Blue Shield v. Travelers Ins. Co., 514 U.S. 645, 657, 660 (1995) (emphasizing ERISA's focus on the "nationally uniform *administration* of employee benefit plans" and finding no preemption where the state law imposed a surcharge that had an indirect economic influence on ERISA plans but did not "preclude uniform *administrative* practice or the provision of a uniform interstate benefit package if a plan wishes to provide one") (emphasis added).

Applying Dillingham, the Tenth Circuit found no preemption of a Colorado law setting substantive safety standards for apprenticeship training programs by requiring a one-to-one ratio of electrical journeyman to apprentices on jobsites. Willmar Elec. Serv. Inc. v. Cooke, 212 F.3d 533, 537-39 (10th Cir. 2000). The court addressed and rejected an argument that the law should be preempted because it "dictated" the teacher-to-student ratio that ERISA plans must use in an apprenticeship training program:

> An examination of the objectives of ERISA and the effects of the Colorado law persuades us that this is not the type of regulation Congress had in mind in the preemption clause. The primary effect of the ratio requirement is to indirectly increase the cost of apprentice training. In this respect it is directly analogous to the apprentice wage law at issue in

Dillingham.    In requiring such supervision the Colorado law neither mandates nor limits the granting of benefits to employees.

Willmar, 212 F.3d at 538.

I find the Tenth Circuit's logic and reasoning in Willmar persuasive, and disagree with the majority's attempt to distinguish it on the grounds that Minnesota's law actually prevents apprentice training.  The substantive safety standards in Minnesota's statute and regulations are perhaps more comprehensive than the Colorado law at issue in Willmar, but that is a difference in degree, not in kind.  Both sets of laws have the same effect on ERISA plans; both indirectly increase the cost of apprentice training in order to comply with substantive safety standards set by the state, but neither "mandates nor limits the granting of benefits to employees."  Id.  Likewise, both function as laws of general applicability, indiscriminately requiring safety standards for ERISA and non-ERISA apprenticeship training programs alike.

"Indeed, if ERISA were concerned with any state action — such as medical care quality standards or hospital workplace regulations — that increased costs of providing certain benefits, and thereby potentially affected the choices made by ERISA plans, we could scarcely see the end of ERISA's pre-emptive reach, and the words 'relate to' would limit nothing."  Dillingham, 519 U.S. at 329.  Applying Dillingham, we found no preemption for a Minnesota law that dictated ethical standards for physicians participating in an ERISA plan, concluding that "[n]othing in ERISA attempts to preempt the entire field of health care or the regulation of professional standards for physicians."  Shea v. Esensten, 208 F.3d 712, 719 (8th Cir. 2000).  We found it significant that "Minnesota's law [is one] of general application. It makes no reference to and functions irrespective of the existence of an ERISA plan." Id. at 717 (citations and internal quotations omitted).

Likewise, nothing in ERISA attempts to preempt the entire field of apprenticeship training programs. Minnesota's Sprinkler Fitter statute and concomitant regulations are laws of general application, which function irrespective of the existence of an ERISA plan in their indiscriminate imposition of substantive safety standards. I find it inconsistent for us to hold in Shea that substantive quality standards in the medical field are not preempted, while holding that substantive safety standards in the fire protection industry are preempted.

I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.