[No. S103942. Dec. 15, 2003.]

R. BETANCOURT et al., Plaintiffs and Appellants, v.
STORKE HOUSING INVESTORS et al., Defendants and Respondents.

## Counsel

Gilbert & Sackman, Laurie A. Traktman, Kenneth J. Sackman and Steven M. Rehaut for Plaintiffs and Appellants.

Reich, Adell, Crost & Cvitan and J. David Sackman for Trustees of the Southern California IBEW-NECA Pension Trust Fund and the Construction Laborers Trust Fund for Southern California Administrative Company, LLC, as Amici Curiae on behalf of Plaintiffs and Appellants.

DeCarlo, Connor & Selvo and Desmond C. Lee for Carpenters Southern California Administrative Corporation as Amicus Curiae on behalf of Plaintiffs and Appellants.

Mullen & Henzell, Derek B. Lipscombe and Rafael Gonzalez for Defendants and Respondents.

## Opinion

CHIN, J.—We granted review to determine whether the federal Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.) preempts a mechanic's lien action (Civ. Code, § 3110)[1] brought by laborers to recover unpaid contributions to their employee benefit plans. ■ ERISA preempts state laws that "relate to" employee benefit plans. (29 U.S.C. § 1144(a).) In 1991, we held that ERISA preempted a similar mechanic's lien statute (§ 3111) that "single[d] out ERISA plans for special treatment" and, thus, related to employee benefit plans. (*Carpenters So. Cal. Admin. Corp. v. El Capitan Development Co.* (1991) 53 Cal.3d 1041, 1049 [282 Cal.Rptr. 277, 811 P.2d 296] (*El Capitan*).) Because section 3110 is a law of general applicability and does not "relate to" ERISA plans (29 U.S.C. § 1144(a)), we conclude that ERISA does not preempt plaintiffs' action.

---

[1] Civil Code section 3110, in pertinent part, provides that "all persons and laborers of every class" are entitled to "a lien upon the property upon which they have bestowed labor . . . for the value of such labor done . . . ."

All further statutory references are to the Civil Code unless otherwise noted.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are largely taken from the Court of Appeal's opinion.

R. Betancourt and other employees (laborers) are union members who worked for R. P. Richards, a subcontractor of Trabucco & Associates. R. P. Richards employed laborers pursuant to a collective bargaining agreement (Agreement) between Trabucco and laborers' union, District Council No. 16 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (Union).

Laborers worked on a residential construction project, which Storke Housing Investors and BDC Storke Development (collectively, Storke) owned. According to the Agreement, laborers were entitled to an hourly compensation package, including wages and benefits. Laborers received their cash wages, but R. P. Richards failed to make contributions to the Union's trust funds for the benefit of laborers. Pursuant to section 3110, laborers recorded a mechanic's lien for unpaid contributions in the amount of $33,236.56 against Storke's real property. In May 2000, laborers, as individuals and as members of Union, and Union, as a party to the Agreement but not as a trust fund (collectively, plaintiffs) filed the instant action to foreclose on the section 3110 lien.

Storke demurred, contending that the amounts due were fringe benefit contributions owing to Union's employee benefit plan, and, as such, ERISA preempted plaintiffs' action. (29 U.S.C. § 1144(a).) Relying on our decision in *El Capitan, supra,* 53 Cal.3d 1041, the trial court concluded that ERISA preempted plaintiffs' action. The court sustained Storke's demurrer without leave to amend and dismissed the action.

Plaintiffs appealed. The Court of Appeal reversed the trial court's judgment. It concluded that "[b]ecause decisions of the United States Supreme Court subsequent to *El Capitan* have dramatically narrowed the preemptive scope of ERISA, we hold that ERISA does not bar this action. We conclude that we are not bound by *El Capitan*." The Court of Appeal reasoned, "Section 3110 is a state law of general applicability which creates no rights or restrictions concerning the administration or funding of ERISA plans. Therefore, it matters not that the remedy provided by section 3110—foreclosure on the landowner's property—is not a remedy provided to redress violations of ERISA. (See 29 U.S.C. § 1132(d)(2).)" Our review follows.

DISCUSSION

"On review of the judgment of the Court of Appeal reversing the superior court's orders sustaining defendants' demurrers, we examine the complaint de

novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]" (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) As relevant here, plaintiffs' complaint alleged that (1) laborers worked on Storke's real property for an hourly compensation pursuant to the Agreement; (2) laborers' Union was a party to the Agreement; (3) laborers were due $33,236.56 for their unpaid labor on the project; and (4) plaintiffs recorded a mechanic's lien on the Storke property pursuant to section 3110.

The parties do not seriously dispute that plaintiffs' section 3110 action seeks to recover unpaid contributions to their benefit plans. Though section 3110 is not limited to an express trust fund (see § 3111), Storke maintains that plaintiffs' "action is a backdoor attempt to do something that this court in *El Capitan* has already ruled against." Because *El Capitan* held that ERISA preempts an action under section 3111, Storke contends an action under section 3110 is similarly preempted. In contrast, plaintiffs urge this court to declare that *El Capitan* is no longer good law in light of subsequent federal high court decisions on ERISA preemption, but also claim that *El Capitan* is simply not applicable to cases arising under section 3110. In order to address these claims, we begin with a discussion of ERISA and its preemption clause.

A. *ERISA*

"ERISA is a comprehensive federal statutory scheme designed to promote the interests of employees and their beneficiaries in employee benefit plans." (*El Capitan, supra,* 53 Cal.3d at p. 1047, citing *Shaw v. Delta Air Lines, Inc.* (1983) 463 U.S. 85, 90 [77 L.Ed.2d 490, 103 S.Ct. 2890] (*Shaw*).) It "sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans. [Citations.]" (*Shaw, supra,* 463 U.S. at p. 91.) ERISA's preemption clause states, in pertinent part: "[T]he provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a)[2] of this title. . . ." (29 U.S.C. § 1144(a), italics added.) "The basic thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." (*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* (1995) 514 U.S. 645, 657 [131 L.Ed.2d 695, 115 S.Ct. 1671] (*Travelers*).)

[2] As relevant here, "The term 'employee benefit plan' . . . means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both" established or maintained by an employer engaged in commerce or in any industry or activity affecting commerce and/or by an employee organization representing employees so engaged. (29 U.S.C. § 1002(3); see 29 U.S.C. § 1003(a).)

In its 1983 decision in *Shaw*, the high court pronounced that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." (*Shaw, supra,* 463 U.S. at pp. 96–97, fn. omitted.) In a later case, the high court explained that "to determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' [*Travelers, supra,* 514 U.S. at p. 656], as well as to the nature of the effect of the state law on ERISA plans, *id.,* at 658–659." (*California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.* (1997) 519 U.S. 316, 325 [136 L.Ed.2d 791, 117 S.Ct. 832] (*Dillingham*) [holding California's prevailing wage statute is not preempted by ERISA].) As to an impermissible reference, the high court concluded that "[w]here a State's law acts immediately and exclusively upon ERISA plans . . . , or where the existence of ERISA plans is essential to the law's operation . . . , that 'reference' will result in pre-emption." (*Dillingham, supra,* 519 U.S. at p. 325.)

The high court has also held that "state laws providing alternative enforcement mechanisms also relate to ERISA plans, triggering pre-emption. See *Ingersoll-Rand [Co. v. McClendon* (1990) 498 U.S. 133 [112 L.Ed.2d 474, 111 S.Ct. 478]]." (*Travelers, supra,* 514 U.S. at p. 658; see also *Rush Prudential HMO, Inc. v. Moran* (2002) 536 U.S. 355, 377–379 [153 L.Ed.2d 375, 122 S.Ct. 2151] (*Rush Prudential*);[3] *Pilot Life, supra,* 481 U.S. at p. 56.) "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. . . . [¶] The

---

[3] In *Rush Prudential,* the high court discussed the underpinnings for the alternative enforcement mechanism rule set forth in *Pilot Life Ins. Co. v. Dedeaux* (1987) 481 U.S. 41, 56 [95 L.Ed.2d 39, 107 S.Ct. 1549] (*Pilot Life*). (*Rush Prudential, supra,* 536 U.S. at pp. 378–379 [discussing cases].) After noting that since *Pilot Life* it has found only one other state law that provided a prohibited alternative remedy (i.e., *Ingersoll-Rand Co. v. McClendon, supra,* 498 U.S. 133 (*Ingersoll-Rand*)), the high court ultimately found that the state law in question— Illinois's statute requiring health maintenance organizations (HMO's) to provide independent review of disputes between primary care physicians and HMO's—did not conflict with ERISA's civil enforcement scheme because it did not provide a new cause of action or authorize a new form of ultimate relief. (*Rush Prudential, supra,* 536 U.S. at pp. 379–380.)

The high court acknowledged that the alternative enforcement mechanism rule "has, up to now, been far more straightforward than it is here." (*Rush Prudential, supra,* 536 U.S. at p. 378.) In contrast to the additional claim or remedy at issue in *Pilot Life* and *Ingersoll-Rand,* the state statute in *Rush Prudential* did not "enlarge" the relief available under ERISA. (*Rush Prudential, supra,* 536 U.S. at p. 379.) "[A]lthough the reviewer's determination would presumably replace that of the HMO as to what is 'medically necessary' under this contract, the relief ultimately available would still be what ERISA authorizes in a suit for benefits under [29 United States Code section] 1132(a)." (*Rush Prudential, supra,* 536 U.S. at p. 380, fns. omitted.) Thus, the high court concluded that the Illinois statute did not "fall within *Pilot Life'*s categorical preemption." (*Rush Prudential, supra,* 536 U.S. at p. 380.)

deliberate care with which ERISA's civil enforcement remedies [in 29 United States Code section 1132(a)] were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." (*Pilot Life, supra,* 481 U.S. at p. 54.) For example, the high court has held that a state law wrongful discharge action based on an employer's motivation to avoid paying pension benefits (*Ingersoll-Rand, supra,* 498 U.S. at p. 145), and a state common law action based on improper processing of an ERISA benefits claim (*Pilot Life, supra,* 481 U.S. at p. 57), both impermissibly conflicted with ERISA's enforcement scheme.

Beginning with *Travelers*, the United States Supreme Court has narrowed the scope of ERISA preemption. (*Travelers, supra,* 514 U.S. at p. 656 [court must look "beyond the unhelpful text" of preemption clause];[4] *Dillingham, supra,* 519 U.S. at pp. 324–325 [following *Travelers*]; *De Buono v. NYSA-ILA Medical & Clinical Services Fund* (1997) 520 U.S. 806, 813–814 [138 L.Ed.2d 21, 117 S.Ct. 1747] (*De Buono*) [same].) While the high court recognized that ERISA's preemption clause (29 U.S.C. § 1144(a)) was "clearly expansive," the court clarified that its "relate to" language was not intended to change "the starting presumption that Congress does not intend to supplant state law." (*Travelers, supra,* 514 U.S. at pp. 654–655; *De Buono, supra,* 520 U.S. at p. 813.)

In other words, "where federal law is said to bar state action in fields of traditional state regulation, [citation], we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " (*Travelers, supra,* 514 U.S. at p. 655; *De Buono, supra,* 520 U.S. at p. 814 [respondents have "considerable burden of overcoming 'the starting presumption' "].) The high court emphasized that " '[p]re-emption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.' " (*Travelers, supra,* 514 U.S. at p. 661.)

---

[4] In *Travelers*, the high court held that ERISA did not preempt a New York statute requiring hospitals to collect surcharges from patients whose insurance coverage was paid by employee healthcare plans subject to ERISA, but not from patients insured by a Blue Cross/Blue Shield plan. (*Travelers, supra,* 514 U.S. at p. 649.) Because New York's surcharges only indirectly affected the prices of insurance policies, which was a result typical of traditional state regulation, the court held the state law was not preempted by ERISA. (*Travelers, supra,* 514 U.S. at p. 668.) "[A] law operating as an indirect source of merely economic influence on administrative decisions . . . should not suffice to trigger pre-emption . . . ." (*Id.* at p. 662.)

B. *Section 3110*

Section 3110 provides that "all persons and laborers[5] of every class performing labor upon or bestowing skill or other necessary services on . . . a work of improvement shall have a lien upon the property upon which they have bestowed labor . . . for the value of such labor done . . . whether done . . . at the instance of the owner or of any person acting by his authority or under him as contractor or otherwise." Our state Constitution guarantees that "laborers of every class[] shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." (Cal. Const., art. XIV, § 3.) " 'The mechanic's lien is the only creditors' remedy stemming from constitutional command and our courts "have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." ' " (*Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997) 15 Cal.4th 882, 889 [64 Cal.Rptr.2d 578, 938 P.2d 372] (*Wm. R. Clarke*).) Even before our present Constitution was adopted in 1879, the first session of our state Legislature enacted a mechanic's lien law in 1850. (*Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 826 [132 Cal.Rptr. 477, 553 P.2d 637] (*Connolly*).)

In concluding that ERISA did not preempt plaintiffs' action, the Court of Appeal reasoned that section 3110 is a statute governing the payment of wages and thus, under federal case law, is the subject of traditional state regulation. Noting that section 3110 does not refer to employee benefit trust funds, the Court of Appeal characterized the provision as "a state law of general applicability that creates no rights or restrictions concerning the administration or funding of ERISA plans."

■ Under the rationale of *Travelers* and *Dillingham*, we agree with the Court of Appeal that ERISA does not preempt plaintiffs' action under section 3110. The state statute does not "relate to" ERISA plans. (29 U.S.C. § 1144(a).) In other words, it does not make "reference to" or have a "connection with" ERISA plans. (See *Dillingham, supra,* 519 U.S. at p. 324.)

■ Unlike section 3111, which we discuss further below, section 3110 is a mechanic's lien law of general application and does not itself refer to ERISA plans. (See *Burch v. George* (1994) 7 Cal.4th 246, 273 [27 Cal.Rptr.2d 165, 866 P.2d 92] [no contest law "is a neutral state law of

---

[5] In 1999, the Legislature amended the definition of "laborer" (§ 3089) to include "an express trust fund described in Section 3111, to whom a portion of the compensation of a laborer . . . is paid by agreement with that laborer or the collective bargaining agent of that laborer." (Stats. 1999, ch. 795, § 4.)

general application that here would only tenuously affect an ERISA plan, if at all"].)[6] As noted, though the Court of Appeal did not address this, in 1999 the Legislature amended the definition of "laborer," which is referenced in section 3110, to include an express trust fund. (§ 3089, subd. (b).) The amendment to section 3089, however, is "intended to give effect to the long-standing public policy of this state to protect the entire compensation of laborers on works of improvements, regardless of the form in which that compensation is to be paid." (§ 3089, subd. (b).) We conclude that section 3110 is not " 'specifically designed to affect employee benefit plans.' " (*Mackey v. Lanier Collection Agency & Serv.* (1988) 486 U.S. 825, 829 [100 L.Ed.2d 836, 108 S.Ct. 2182] (*Mackey*).) Section 3110 does not "act[] immediately and *exclusively* upon ERISA plans," nor is "the existence of ERISA plans . . . essential to the law's operation." (*Dillingham, supra,* 519 U.S. at p. 325, italics added; *Southern Calif. IBEW-NECA Trust v. Standard Indus.* (9th Cir. 2001) 247 F.3d 920, 926 (*Standard Industrial*) [payment bond statute "not necessarily limited to ERISA plans"; no impermissible reference].) This section is " ' "remedial legislation, to be liberally construed" ' " to protect the rights of laborers and materialmen in general. (*Wm. R. Clarke, supra,* 15 Cal.4th at p. 889.) Because section 3110 " 'functions irrespective of . . . the existence of an ERISA plan,' " it "does not make reference to ERISA plans." (*Dillingham, supra,* 519 U.S. at p. 328, quoting *Ingersoll-Rand, supra,* 498 U.S. at p. 139; *Travelers, supra,* 514 U.S. at p. 656.)

Nor does section 3110 have a "connection with" ERISA plans. (*Dillingham, supra,* 519 U.S. at pp. 328–329; *Travelers, supra,* 514 U.S. at p. 662.) As a law of general applicability, section 3110 "does not bind ERISA plans to anything." (*Dillingham, supra,* 519 U.S. at p. 332.) This mechanic's lien law permits laborers and other persons, who may include participants in ERISA plans or the plans themselves, to obtain a lien to secure payment for their labor and materials. (§§ 3110, 3089.) Section 3110's effect on ERISA plans, however, is indirect at most because it does not compel plans to function in a certain way. (*Dillingham, supra,* 519 U.S. at p. 333 [added inducement under Lab. Code, § 1777.5 is not "tantamount to a compulsion upon apprenticeship programs"]; *Travelers, supra,* 514 U.S. at p. 662 [surcharges under New York statute "leave plan administrators right where they would be in any case, with the responsibility to choose the best overall coverage for the money"].)

The high court has explained that "where federal law is said to bar state action in fields of traditional state regulation, [citation], we have worked on

---

[6] "A state law that applies to a wide variety of situations, including an appreciable number that have no specific linkage to ERISA plans, constitutes a law of general application for purposes of 29 U.S.C. § 1144(a)." (*Carpenters Local Union No. 26 v. U.S. F. & G. Co.* (1st Cir. 2000) 215 F.3d 136, 144–145 (*U.S. Fidelity*).)

the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " (*Travelers, supra,* 514 U.S. at p. 655.) ■ As noted, California's mechanic's lien law derives from constitutional command (Cal. Const., art. XIV, § 3) and dates back to 1850. (*Wm. R. Clarke, supra,* 15 Cal.4th at p. 889; *Connolly, supra,* 17 Cal.3d at p. 826.) We have long recognized that it is within the state's police power to provide for enforcement of liens for labor and materials. (See *Roystone Co. v. Darling* (1915) 171 Cal. 526, 540 [154 P. 15].) Storke fails to show that it was Congress's " 'clear and manifest purpose' " (*Travelers, supra,* 514 U.S. at p. 655) that ERISA preempt our state's long-standing mechanic's lien laws. As the high court explained, "We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violence to our presumption that Congress intended nothing of the sort." (*Dillingham, supra,* 519 U.S. at p. 334; see *De Buono, supra,* 520 U.S. at pp. 814–815 [describing types of state laws Congress intended ERISA to preempt].)

Storke, however, maintains that section 3110 is preempted because it constitutes an alternative enforcement mechanism to ERISA. (*Travelers, supra,* 514 U.S. at p. 658; *Pilot Life, supra,* 481 U.S. at p. 56; see *El Capitan, supra,* 53 Cal.3d at p. 1054.) In their section 3110 action, laborers seek to recover delinquent contribution benefits from Storke, who is neither their employer nor a signatory to the Agreement. Storke contends this is impermissible under *El Capitan, supra,* 53 Cal.3d at page 1052, and is inconsistent with federal cases. (See, e.g., *EklecCo v. Iron Workers Union Sec. Funds* (2d Cir. 1999) 170 F.3d 353, 357 (*EklecCo*) [New York's mechanic's lien law preempted as an alternative enforcement mechanism]; *Bast v. Prudential Ins. Co. of America* (9th Cir. 1998) 150 F.3d 1003, 1010 [ERISA preempts state law claims even if plaintiffs are left without a remedy]; *Crull v. Gem Ins. Co.* (9th Cir. 1995) 58 F.3d 1386, 1391, fn. 3 [*Travelers* does not "signal a retreat from *Pilot Life*'s holding" regarding the exclusive remedies of ERISA].)

Pointing to this case's factual similarities with *El Capitan,* Storke claims laborers "are seeking to have alternate responsible parties—parties who never entered into any contractual arrangement with the trust funds, the Union, the individual employees, or the employer—to pay those contributions."[7] For reasons that follow, we disagree that *El Capitan* compels the conclusion that ERISA preempts section 3110. Nor does a section 3110 lien action constitute

---

[7] Storke maintains that plaintiffs also lack standing to bring an action to recover funds owed directly to the employee trust fund: "The Union's trust funds are the actual and only entities entitled to recover the delinquent contributions due under the collective bargaining agreement between the Union and R. P. Richards." (Fn. omitted.) Plaintiffs counter that under "the plain meaning of Section 3110, there can be no doubt that the laborers or Individual Plaintiffs have

an impermissible alternative enforcement mechanism for purposes of ERISA preemption.

## C. *El Capitan*

In *El Capitan*, the employees were union members entitled to fringe benefit contributions under a collective bargaining agreement. After their employer failed to make contributions to the employees' trust funds in excess of $121,000, the funds' administrator recorded trust fund liens under former section 3111[8] against El Capitan Development Company's real property, on which the employees had performed work. The administrator alleged that "because the unpaid contributions were due on account of work performed on El Capitan's property, section 3111 created liens on that property." (*El Capitan, supra,* 53 Cal.3d at p. 1046.) We held that the action under section 3111 was preempted under ERISA (29 U.S.C. § 1144(a)). (*El Capitan, supra,* 53 Cal.3d at p. 1056.)

In our 1991 decision, we recognized the broad scope of the key term, "relate to," in ERISA's preemption clause (29 U.S.C. § 1144(a)), based on congressional intent and high court decisions. (*El Capitan, supra,* 53 Cal.3d at pp. 1047–1049.) We concluded that "[a]ll that is necessary to invoke ERISA's statutory preemption provision is that the state law in question 'relate to' an ERISA plan." (*Id.* at p. 1047.) The state law in question was section 3111, which we concluded "provid[ed] an additional method of funding, a lien against real property . . . ." (*El Capitan, supra,* 53 Cal.3d at p. 1052.)

We determined that "section 3111 'relates to' such plans by creating a mechanism for enforcing an employer's contribution obligations that Congress did not provide." (*El Capitan, supra,* 53 Cal.3d at pp. 1047–1048.) Relying on *Pilot Life, supra,* 481 U.S. 41, and *Iron Workers Pension Fund v.*

---

standing to enforce their mechanics' lien rights. In fact, both the laborers and their representative, the Union, have standing under Sections 3089 and 3110."

We need not determine this issue because it does not directly bear on the issue presented in this case, i.e., whether ERISA preempts a section 3110 action. (See *Rush Prudential, supra,* 536 U.S. at p. 363, fn. 3 [defendant's "true status . . . is immaterial to our holding"].)

[8] At the time of our 1991 decision, former section 3111 provided: " 'For purposes of this chapter, an express trust fund established pursuant to a collective bargaining agreement to which payments are required to be made on account of fringe benefits supplemental to a wage agreement for the benefit of a claimant on particular real property shall have a lien on such property in the amount of the supplemental fringe benefit payments owing to it pursuant to the collective bargaining agreement.' " (*El Capitan, supra,* 53 Cal.3d at p. 1045, fn. 1; but see Stats. 1999, ch. 795, § 7, amending § 3111.)

*Terotechnology* (5th Cir. 1990) 891 F.2d 548, we emphasized that section 3111 was preempted because this provision purported to regulate ERISA plans through a new cause of action or remedy not provided under ERISA, the state's lien laws. (*El Capitan, supra,* 53 Cal.3d at pp. 1048, 1051, 1052, 1054, 1055.) " 'The expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, . . . would make little sense if the remedies available to ERISA participants and beneficiaries under [29 U.S.C. § 1132(a)] could be supplemented or supplanted by varying state laws.' " (*El Capitan, supra,* 53 Cal.3d at p. 1053, quoting *Pilot Life, supra,* 481 U.S. at p. 56.) This recognition that section 3111, if applied, would regulate the conditions under which the terms of an ERISA plan might be enforced supported our conclusion that the section related to such plans and thus was preempted. (*El Capitan, supra,* 53 Cal.3d at pp. 1048, 1051, 1054.)

We also rejected the argument that section 3111 was not preempted because it was a generally applicable mechanism for enforcing judgments. (See *Mackey, supra,* 486 U.S. 825 [general state garnishment statute not preempted].) We explained that "[s]ection 3111 gives a trust fund a right to a lien against the property of third parties, such as El Capitan, that the fund would not, and does not, have under ERISA. . . . Therefore, section 3111 cannot be upheld under *Mackey* as it creates a new substantive right against the property of a third party that is not created by ERISA and, thus, goes beyond being a mere means of enforcing a judgment." (*El Capitan, supra,* 53 Cal.3d at p. 1055.) We also rejected the contention that section 3111 only affected an employee benefit plan in a " 'tenuous, remote, or peripheral' manner"; rather, the provision had the substantive effect of making an additional entity liable to the trust fund for contributions. (*El Capitan, supra,* 53 Cal.3d at p. 1056.)

Contrary to Storke's contention, *El Capitan* does not compel the conclusion that section 3110 is preempted. In that decision, we explained the differences between sections 3110 and 3111, though both provide mechanic's lien remedies. (*El Capitan, supra,* 53 Cal.3d at p. 1049 & fn. 3.) We stated that in contrast to persons seeking a mechanic's lien remedy under section 3110, ERISA plans do not provide labor and materials for a construction project. (*El Capitan, supra,* 53 Cal.3d at p. 1049.) But because section 3111 would treat ERISA plans the same as persons who provide labor and materials by giving these plans a mechanic's lien remedy unavailable under ERISA, we concluded section 3111 would single out ERISA plans for special treatment and thus "relates to" these plans. (*El Capitan, supra,* 53 Cal.3d at p. 1049; *Mackey, supra,* 486 U.S. at p. 829.)

Though we recognized in *El Capitan* that by providing a new cause of action or remedy, section 3111 purported to regulate ERISA plans (*El*

*Capitan, supra,* 53 Cal.3d at p. 1051), our holding that section 3111 was preempted relied heavily on the fact that the section is "designed to affect [ERISA plans] specifically." (*El Capitan, supra,* 53 Cal.3d at p. 1049.) We observed that the high court "has 'virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are preempted under § 514(a).' " (*Ibid.,* quoting *Mackey, supra,* 486 U.S. at p. 829.) We emphasized that unlike section 3110, "[s]ection 3111 is specifically for the use of express trust funds established pursuant to collective bargaining agreements." (*El Capitan, supra,* 53 Cal. 3d at p. 1049, fn. 3.)[9]

■ We conclude that section 3110 does not constitute an alternative enforcement mechanism subject to ERISA preemption. (See *U.S. Fidelity, supra,* 215 F.3d 136; see also *Standard Industrial, supra,* 247 F.3d 920.) In *U.S. Fidelity,* the First Circuit Court of Appeals held that a Massachusetts bond statute—requiring a general contractor to post a bond to secure payment for a subcontractor's fringe benefit contributions—was not preempted by ERISA. After noting the "changed legal landscape" of ERISA preemption jurisprudence (*U.S. Fidelity, supra,* 215 F.3d at p. 138), *U.S. Fidelity* concluded the bond statute did not constitute an alternative enforcement mechanism: "Those state laws which touch upon enforcement but have no real bearing on the intricate web of relationships among the principal players in the ERISA scenario (e.g., the plan, the administrators, the fiduciaries, the beneficiaries, and the employer) are not subject to preemption on this basis. [Citation.] It follows that a state statute which only creates claims against a surety does not constitute an impermissible alternative enforcement mechanism as that term is used in ERISA jurisprudence." (*Id.* at p. 141.) *U.S. Fidelity* deemed the state bond statute a law of general applicability (*id.* at p. 145), and recognized the statute "regulates an area of the law traditionally thought to be the states' preserve: enforcing contracts under state law for the citizenry's protection. [Citations.]" (*Id.* at p. 141.)

■ Likewise, we conclude that section 3110 is a statute that has "no real bearing on the intricate web of relationships among the principal players in the ERISA scenario . . . ." (*U.S. Fidelity, supra,* 215 F.3d at p. 141.) As a

---

[9] The 1999 amendment adding express trust funds to the parties permitted to bring an action under section 3110 (see § 3089; Stats. 1999, ch. 795, § 4), does not alter our conclusion that section 3110 does not single out ERISA plans for special treatment. (*El Capitan, supra,* 53 Cal.3d at p. 1049.) The cross-reference to express trust funds in this context is not dispositive for ERISA preemption. For example, in *Dillingham,* although Labor Code section 1777.5's prevailing wage statute appeared to apply only to apprenticeship programs that were ERISA plans, the high court determined that not all such programs were covered by ERISA. (*Dillingham, supra,* 519 U.S. at pp. 325–327 & fn. 5.) The court ultimately held that Labor Code section 1777.5 was not preempted by ERISA. (*Dillingham, supra,* 519 U.S. at pp. 328, 334.) Likewise, we conclude that even though section 3110 includes express trust funds among the long list of those entitled to liens, this inclusion is not determinative for ERISA preemption.

remedial statute of general applicability, section 3110 does not regulate the relationship between ERISA plans and participants or beneficiaries. (See *ante*, at pp. 1165–1166.) ■ Plaintiffs here are laborers and their union that seek to secure a mechanic's lien on Storke's real property for full payment for their labor. They are neither suing or being sued in an effort to enforce the terms of an ERISA plan. (See *Laborers' Trust Funds v. Maui Prince Hotel* (1996) 81 Haw. 487 [918 P.2d 1143, 1154] (*Maui Prince Hotel*) [state lien law not preempted because it "merely provides a 'remedy available to a certain class of creditors that transcends ERISA obligations and concerns' "].) Neither the plan, nor its administration and management, nor the benefits it provides, are implicated except insofar as it may be the recipient of any amounts recovered under the lien. To the extent the mechanic's lien remedy "could be interpreted as regulating relationships between an ERISA plan and a third party, the relationships are too tenuous, remote, or peripheral to be preempted by ERISA." (*Standard Industrial, supra,* 247 F.3d at p. 929.)

The high court's decision in *Mackey, supra,* 486 U.S. 825, further helps distinguish this case from *El Capitan.* While the high court held that Georgia's general garnishment law was not preempted, it concluded that the state's antigarnishment provision that expressly referred to, and applied solely to, ERISA employee benefit plans was subject to ERISA preemption. (*Mackey, supra,* 486 U.S. at p. 829.) The antigarnishment provision protected ERISA welfare benefit plans, but not non-ERISA plans, from garnishment. (*Id.* at p. 830 & fn. 4.) As the high court explained, "It is this 'singling out' that pre-empts" the state statute. (*Id.* at p. 838, fn. 12.) On the other hand, the court concluded the general garnishment law was among those "state-law methods for collecting money judgments [that] must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan." (*Id.* at p. 834.)[10]

Storke asserts that the "multiplicity and inconsistency of the lien laws from state to state, and the variety of conditions that they impose on employers,

---

[10] Plaintiffs and their amici curiae urge us to overrule *El Capitan, supra,* 53 Cal.3d 1041. We decline to do so. As we have discussed, *El Capitan* is distinguishable from this case. Moreover, our holding in *El Capitan* was based on statutory language that the Legislature has since amended. (See *El Capitan, supra,* 53 Cal.3d at p. 1045, fn. 1 [quoting former § 3111]; Stats. 1999, ch. 795, § 7 [amending § 3111].) Approximately eight years after our *El Capitan* decision, the Legislature amended section 3111 "to restore the protection created by the mechanic's lien law adopted at the first legislative session of this state, refined and expanded over a century and a half, for the just pay due to workers on construction jobs, without discrimination as to the manner in which the pay is allocated, whether union or nonunion, in cash or a combination of cash and benefits." (Stats. 1999, ch. 795, § 9.) The Legislature's intent was "to clarify that the protections offered in this title are meant to cover the entire compensation package of employees, and not to single out or treat differently any particular form of compensation." (*Ibid.*) We have no occasion to consider whether ERISA preempts current section 3111 and express no view on this issue.

their benefit plans and third parties are precisely the burdens that Congress intended for ERISA's preemption provision to avoid." We are unpersuaded. First, Storke fails to identify any specific material differences between our state lien law and any from other jurisdictions. Second, and more importantly, the high court has explained that a state law "that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute." (*De Buono, supra,* 520 U.S. at p, 816, fn. omitted.)

### D. *Other Decisions*

Several post-*Travelers* cases from other jurisdictions have reached conclusions different from ours. (See, e.g., *EklecCo, supra,* 170 F.3d at p. 357 [lien statute making property owner liable for employer's ERISA contributions preempted as alternative enforcement mechanism]; *Plumbing Industry Bd. v. E.W. Howell Co., Inc.* (2d Cir. 1997) 126 F.3d 61, 68–69 (*Plumbing Industry Bd.*) [same]; *IBEW v. Trig Elect. Const. Co.* (2000) 142 Wn.2d 431 [13 P.3d 622, 627] (*Trig*) [public works lien statute making third party contractor liable for ERISA contributions preempted as "alternative funding mechanism for the ERISA plans"]; but see *Maui Prince Hotel, supra,* 918 P.2d at pp. 1154–1155 [neutral and general mechanic's and materialman's lien statute not preempted].) As one court observed, "Because the state law impermissibly adds to the exclusive list of parties ERISA holds responsible for an employer's benefit obligations, it cannot stand." (*Plumbing Industry Bd., supra,* 126 F.3d at p. 69.) However, we find these cases to be inapposite.

Although these cases recognized the "starting presumption that Congress does not intend to supplant state law" in areas of traditional state regulation (*Travelers, supra,* 514 U.S. at p. 654), we conclude that none of these cases gave due consideration to the presumption before finding preemption. (*Plumbing Industry Bd., supra,* 126 F.3d at pp. 68–69; *EklecCo, supra,* 170 F.3d at p. 357; *Trig, supra,* 13 P.3d at pp. 626–627.) Indeed, in discussing the alternative enforcement mechanism doctrine, these cases did not expressly consider whether the state statute at issue was in an area of traditional state regulation. (*Plumbing Industry Bd., supra,* 126 F.3d at pp. 68–69; *EklecCo, supra,* 170 F.3d at p. 357; *Trig, supra,* 13 P.3d at pp. 626–627; see also *Trig, supra,* 13 P.3d. at p. 629 (dis. opn. of Johnson, J.) ["the majority avoids any meaningful application of the post-*Travelers* doctrine and reaches a conclusion inconsistent with current law"].) This presumption against preemption is particularly salient in this case given that our state has long recognized the importance of the mechanic's lien remedy, which is within the proper exercise of our state's police power. (*Roystone Co. v. Darling, supra,* 171 Cal. at p. 540; *Connolly, supra,* 17 Cal.3d at p. 826; see *ante,* at pp. 1165, 1167.)

Moreover, in *Plumbing Industry Bd., supra,* 126 F.3d 61, relied on by *EklecCo, supra,* 170 F.3d 353, the New York lien law at issue was specifically amended "to better protect the rights of workers by 'supplement[ing]' the scheme for enforcing employee benefit obligations arising in connection with public works contracts [citation]." (*Plumbing Industry Bd., supra,* 126 F.3d at p. 65.) In concluding that ERISA preempted the lien law as an alternative enforcement mechanism, the Second Circuit Court of Appeals observed, "Were states free to supplement the enforcement matrix at will, Congress' policy choices would be undermined." (*Plumbing Industry Bd.,* at p. 68, citing *Pilot Life, supra,* 481 U.S. at p. 54.) In contrast, section 3110 here was not designed to "supplement" the enforcement scheme for employee benefit obligations. Instead, this mechanic's lien law implements our state's constitutional mandate to protect "laborers of every class" and allow them to recover their entire compensation, regardless of the form the compensation takes. (Cal. Const., art. XIV, § 3; *Wm. R. Clarke, supra,* 15 Cal.4th at p. 889; see also § 3089, subd. (b).)

## DISPOSITION

We affirm the Court of Appeal's judgment.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.