Lu, John T., J.

INTRODUCTION

The plaintiffs, Trustees of the Iron Workers District Council of New England, Pension, Health, and Welfare, Annuity, Vacation, Education Funds, and other Funds (Trustees) and International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers, Local 7 AFL-CIO (Union) (collectively, Plaintiffs), brought an action (Lead Case) to enforce the mechanic’s lien they recorded in March of 2007 against property owned by defendant Oxford Sutton Development, LLC (Oxford) for labor that the defen *422 dant B&M Steel Erectors, Inc. (B&M) hired Union workers to perform on Oxford’s property. The Plaintiffs then brought a second action after the defendant Widewaters Construction, Inc. (Widewaters) filed a dissolution bond, underwritten by defendant Liberty Mutual Insurance Company (Liberty Mutual). The court consolidated this second case (Consolidated Case) with the Lead Case in November of 2007.
Oxford moves to dismiss the Lead Case, and Widewaters and Liberty Mutual move to dismiss, in part, the Consolidated Case. The Court determines that Widewaters and Liberty Mutual’s bond dissolved the Plaintiffs’ lien, requiring the dismissal of Count I of the Lead Case and Count I of the Consolidated Case, and enabling the Plaintiffs to seek to enforce the dissolution bond, including as to benefits protected by the Employee Retirement Income Security Act (ERISA).

BACKGROUND

For purposes of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the Plaintiffs’ complaints.[6]
Widewaters served as the general contractor for the construction project (Project) on Oxford’s property. B&M, as Widewaters’ subcontractor for the Project, hired Union workers[7] to provide labor pursuant to a collective bargaining agreement executed on August 21, 2006 (Agreement). In the Agreement, B&M agreed, in part, to submit to the Trustees “contributions to a health and welfare fund, pension fund, annuity funds, apprentice and training funds, and other funds or trusts ...” [and] to be bound by the terms of the respective fund agreements and any applicable declarations of trusts . . . Agreement, ¶6. B&M also agreed “to pay all costs and attorney fees reasonably incurred in collecting any of its delinquent contributions to any such fund or trust.” Id.
B&M failed to pay the Union workers their wages and benefits for the labor they performed on Oxford’s property. On March 9, 2007, the Plaintiffs recorded a lien for $86,110.50 on Oxford’s property pursuant to G.L.c. 254, §§1 and 8 (Lien). In the Lien document, the Plaintiffs certified that they gave “a just and true account, with all just credits given, of the amount $86,110.590 due for labor performed and actually used in the” Project. Plaintiffs’ Lien, at 1. The Plaintiffs also wrote that they claimed the Lien “to secure the payment of the debt due as aforesaid, including interest and agreed penalties, which includes cost and attorney fees which may arise in establishing, enforcing and collecting amounts herein claimed due.” Plaintiffs’ Lien, at 2.
The Plaintiffs sought to enforce the Lien in the Lead Case, filed on March 21, 2007, in which they asserted a claim against Oxford pursuant to G.L.c. 254, §§ 1 and 8, “for the amounts stated in the Lien, including attorney fees and costs” (Count I). Complaint, Lead Case, 117. The Plaintiffs also alleged, against B&M, a claim “under [§301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185] for the breach of a labor contract in failing to pay wages owed to the” Union workers (Count II). Complaint, Lead Case, 119. At the Plaintiffs’ request, the clerk entered Oxford and B&M’s default on May 8, 2007, pursuant to Mass.R.Civ.P. 55(a). This court set aside the default as to Oxford on February 15, 2008.[8]
On August 3, 2007, Widewaters, with Liberty Mutual as surety, recorded a dissolution bond pursuant to G.L.c. 254, §14, in order to dissolve the Lien (Bond). The Bond follows the format set forth in G.L.c. 254, §14, and lists the penal sum as $86,110.50. The Plaintiffs filed the Consolidated Case on September 26, 2007, to recover the amount of the Bond under G.L.c. 149, §29A (Count I), and under G.L.c. 254, §14 (Count II).

DISCUSSION

In deciding a motion brought pursuant to Rule 12(b)(6), the court must accept as true the complaint’s well-pleaded factual allegations and any reasonable inferences in the plaintiffs favor that may be drawn from those allegations. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996). The motion “should only be allowed if and only if it appears to a certainty that [the claiming pleader] is entitled to no relief under any state of facts which could be proved in support of the claim.” In the matter of Slavitt, 449 Mass. 25, 28 n.2 (2007) (alteration in original) (citations and quotations omitted). The court must give the complaint a generous reading and the plaintiff the benefit of the doubt. New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 29 (1988); Kipp v. Kuelcer, 7 Mass.App.Ct. 206, 210 (1979). A “rule 12(b)(6) motion is ordinarily not the proper vehicle for testing the factual sufficiency of a plaintiffs claims’’!;] rather, a motion for summary judgment is more appropriate. Reardon v. Commissioner of Corr., 20 Mass.App.Ct. 946, 947 (1985); Wrightson v. Spaulding, 20 Mass.App.Ct. 70, 72 (1985).
Oxford seeks to dismiss the Lead Case because, as the Bond has dissolved the Lien, the Plaintiffs’ only remedy is through the Consolidated Case. Widewaters and Liberty Mutual seek to dismiss Count I of the Consolidated Case, arguing that the Plaintiffs cannot proceed under G.L.c. 149, §29A; and they seek to dismiss Count II of the Consolidated Case to the extent that the Lien extends to benefits protected by the Employee Retirement Income Security Act (ERISA), under 29 U.S.C. §§1001-1461.

I. Effect of Dissolution Bond

Pursuant to G.L.c. 254, §1,
[a] person to whom a debt is due for personal labor performed in the erection, alteration, repair or removal of a building or structure upon land ... by virtue of an agreement with, or by consent of, the owner of such building or structure, or of a person *423 having authority from or rightfully acting for such owner in procuring such labor, shall. . . have a lien upon such building or structure and upon such interest in such real property, land, building, structure, or improvement owned by the party authorizing or consenting to said work, for not more than thirty days work actually performed . . .
The “person” who “may file a lien” is the “person or his assignee, agent, authorized representative or third-party beneficiary, to whom amounts are due or for whose benefit amounts are computed and due for, or on the basis of, the personal labor of such person ..." Id. To record the lien, the party must file with the appropriate registry of deeds “a statement, giving a just and true account of the amount due or to become due him, a brief description of the property,[9] .. . [and] the names or the owner of record at the time the work was performed or at the time of filing the statement, . . .” G.L.c. 254, §8 (footnote added).
The Plaintiffs were the proper parties to file the Lien as the Union is the agent of the workers who performed the labor, and the Trustees are the workers’ third-party beneficiaries to whom B&M was to pay amounts for allocation to certain benefit funds. The Plaintiffs also satisfied the recording requirements set forth in G.L.c. 254, §8.
“Any person in interest may dissolve a lien under [G.L.c. 254] by recording or causing to be recorded in the registry of deeds in the county or district where the land lies, a bond of a surety company ... in a penal sum equal to the amount of the lien sought to be dissolved conditioned for the payment of any sum which the claimant may recover on his claim for labor . . .” G.L.c. 254, §14. “Upon the recording of the bond, the lien shall be dissolved.” Id. Once the party who recorded the bond pays to the party who recorded the lien “all sums which shall be adjudged in favor of. . . [the party who recorded the lien) in an action brought under the provisions of said section fourteen, this obligation [i.e., the bond] shall be void, otherwise to remain in full force and effect.” Id.
In the Consolidated Case, the Plaintiffs do not dispute that the Bond complies with G.L.c. 254, §14. For purposes of this decision, therefore, Widewaters, as the general contractor of the construction project on Oxford’s property and as the party that hired subcontractor B&M, properly recorded the Bond as a “person in interest.. .” G.L.c. 254, §14. The only issue then, is whether the Bond dissolves the Lien given the Plaintiffs’ argument that the Bond’s penal sum does not satisfy the Lien amount which, they contend, is for $86,110.50 plus interest and penalties including the costs and attorneys fees incurred in collecting the amounts due.

A. Language of the Lien

Section 1 of G.L.c. 254 does permit a party to file a lien for unpaid wages plus interest and agreed penalties. The way in which the Plaintiffs phrased the Lien, however, indicates that the $86,110.50 is the total amount they seek. In the Lien, the Plaintiffs specified the amount of money each Union worker was due, the total of which is $86,110.50. With the Lien, the Plaintiffs claimed a lien on Oxford’s property “to secure the payment of the debt as aforesaid, including interest and agreed penalties, which includes cost and attorney fees which may arise in establishing enforcing and collecting amounts herein claimed due.”
The “debt due as aforesaid” is the specified $86,110.50. The word “includes” refers back to “The debt due as aforesaid,” thus the $86,110.60 “includes cost and attorney fees which may arise in establishing, enforcing and collecting amounts herein claimed due.” (Emphasis supplied.) These “cost and attorney fees” are the “agreed penalties” set forth in the Agreement. Based on this language, then, the Plaintiffs already added into the $86,110.50 any attorneys fees and costs they incurred or anticipated incurring. The Bond therefore dissolves the Lien in full as the penal sum is “equal to the amount of the [L]ien sought. . .” G.L.c. 254, §14.

B. National Lumber Co. v. United Cas. & Sur. Ins. Co., Inc.

If the Plaintiffs’ use of the singular “includes” was a typographical error, and they intended for the plural “include” to refer to the interest and agreed penalties, is the Bond sufficient to dissolve the Lien in full? This is an issue of first impression. Oxford argues that the Supreme Judicial Court’s reasoning in National Lumber Co. v. United Cas. & Sur. Ins. Co., Inc., 440 Mass. 723 (2004), while based on the intersection of G.L.c. 254, §§4 and 14, should govern this court’s interpretation of the intersection of G.L.c. 254, §§1 and 14. The Plaintiffs counter that National Lumber Co.’s application is limited to situations involving G.L.c. 254, §4.
In National Lumber Co., a general contractor entered into a subcontract with the plaintiff to supply materials necessary to construct a house. 440 Mass. at 724. The subcontract provided that the general contractor would pay the plaintiff “interest at eighteen per cent annually on any amount remaining unpaid and reasonable charges of collection including attorneys fees.” Id. The plaintiff filed a mechanic’s lien pursuant to G.L.c. 254, §4, “claiming] an amount due for materials totaling $26,103.98.” Id. The property owners against whom the plaintiff asserted its mechanic’s lien recorded a dissolution bond “in a penal sum equal to the amount of the lien [i.e., $26,104].” Id. at 725 & n.7. The plaintiff filed an action to enforce the bond against the surety, “and moved to strike the bond as insufficient or to increase the penal sum of the bond to include [the plaintiffs] service charges and attorneys fees and for an assessment of damages.” Id.
*424 The Court held that a mechanic’s lien recorded under G.L.c. 254, §4, does not “include [ ] contractual interest and reasonable attorneys fees in addition to the amount claimed for labor and materials.” Id. at 726. Focusing first on the statutory language, the Court noted that G.L.c. 254, §4, “limits a mechanic’s lien ... to the amount due for labor and materials” and that a bond under G.L.c. 254, §14, dissolves that lien if it is “in a penal sum equal to the amount of the lien sought to be dissolved conditioned for the payment of any sum which the claimant may recover on his claim for labor or labor and materials[.]" Id. at 727 (emphasis in original), quoting G.L.c. 254, §14. Reading the two sections together, the Court held that “[c]ontractual interest and attorneys fees are not ‘labor and material,’ nor can they be part of the ‘amount due’ at the time the statement of claim [under G.L.c. 254, §4] is filed because they have not yet been determined.” Id. The liability of the property owners against whom the plaintiff asserted its lien “derives solely from statute and these statutes present explicit means and amounts for recovery.” Id. at 729.
Unlike section 4 which “limits a mechanic’s lien . . . to the amount due for labor and materials!,]” id. at 727, section 1 of G.L.c. 254 creates a lien on the owner’s property “for not more than thirty days’ work actually performed” and enables a party to “file a lien to secure the payment of such unpaid amounts including interest and agreed penalties for failure to pay the same." G.L.c. 254, §1 (emphasis added). Section 14, however, applies to both sections 1 and 4, therefore the Court’s handling of that provision is applicable to this case. For a bond to dissolve a lien, G.L.c. 254, §14, requires that the bond be “in a penal sum equal to the amount of the lien sought to be dissolved conditioned for the payment of any sum which the claimant may recover on his claim for labor and materials.” The lien the bonds seek to dissolve must have been conditioned, or prepared,[10] for the purpose of securing the payment of an unpaid amount representing labor or materials or both. G.L.c. 254, § 14. The Court held that “interest and attorneys fees are not ‘labor and material!.]’ ” National Lumber Co., 440 Mass. at 727.
The interest and attorneys fees the plaintiff sought in National Lumber Co. arose from the contract, and the Court modified “interest and attorneys fees” with the word “[c]ontractual[.]” Id. In this case, the Plaintiffs argue that the interest and attorneys fees they seek arise out of G.L.c. 254, §1. Labor and materials, however, are not interest and attorneys fees, whether they arise out of a contract or out of a statute, see id., and a bond dissolves a lien where the penal sum equals the payment the claimant may recover on its claim for labor and materials. G.L.c. 254, §14. Here, the payment the Plaintiffs seek for labor, as expressed in the Lien, is $86,110.50; the penal sum of the Bond is equal to that amount. According to the terms of G.L.c. 254, §14, the Bond dissolves the Lien.
The Court in National Lumber Co. resolved “[a]ny doubt that the statutoiy language [of G.L.c. 254, §14,] is limited to labor and materials ... by a consideration of other factors” such as legislative intent and the purpose and effect of G.L.c. 254. 440 Mass. at 728. First, “[r]eading the statute to allow for the recovery of interest and attorneys fees as a component of the lien would contradict the Legislature’s unambiguous intent that an interested person may dissolve the lien by obtaining a surety bond in the amount due for labor and materials and recording it.” Id., citing G.L.c. 254, § 14. Second, “[a]llowing a lien holder to record a claim for one amount, pursuant to [G.L.c. 254,] §8, and . . . later to assert a higher amount because of some term in the contract, would subvert the statute’s purpose to protect those with an interest in the property." Id. Third, “the design of G.L.c. 254 ensures that a person searching the records in a registry of deeds can determine with certainty the amount due.” Id., citing G.L.c. 254, §8. The Court concluded that, as “the plaintiff perfected a lien in an amount due for materials, . . . [i]ts recovery from the [property owners] is limited by statute to this amount.” Id. at 729.
Contrary to the Plaintiffs’ opposition, this reasoning, particularly the Court’s first and third points, supports with equal strength the analysis in this case because sections 8 and 14 apply to liens under G.L.c. 254, §1, See Golden v. General Builders Supply, LLC, 441 Mass. 652, 654 (2004) (noting that mechanic’s lien statute is “strictly construed against the party claiming the lien” (quoting Ng Bros. Constr. v. Cranney, 436 Mass. 638, 644 (2002))). After having filed the Lien in the amount of $86,110.50. the Plaintiffs cannot now seek to subvert the Legislature’s intent with respect to G.L.c. 254, §14, or to frustrate the effect of G.L.c. 254, §8, by rendering inaccurate a party’s search in the registry of deeds. Widewaters and Liberty Mutual’s recording of the Bond dissolved the Lien. Oxford’s motion to dismiss will be allowed, and Count I of the Lead Case seeking to enforce the Lien will be dismissed.[11]

II. G.L.c. 149, §29A

The Plaintiffs base their claim under G.L.c. 149, §29A, on their argument that the Bond fails to dissolve the Lien. As this court has determined that the Bond does dissolve the Lien, Widewaters and Liberty Mutual’s motion to dismiss this claim will be allowed, and Count I of the Consolidated Case will be dismissed. The Plaintiffs may proceed with their claim to enforce the Bond pursuant to G.L.c. 254, §14, as set forth in Count II of the Consolidated Case.

III. ERISA Preemption

In enacting ERISA, Congress intended “to establish the regulation of employee welfare benefit plans ‘as exclusively a federal concern.’ ” New York State Blue Cross Plans v. Travelers Ins., 514 U.S. 645, 655 (1995) (Travelers), quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981). “[T]o avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans[,]” id. at 657, ERISA expressly preempts “any and all *425 State laws insofar as they may now or hereafter relate to any employee benefit plan” that ERISA covers. 29 U.S.C. § 1144(a) (emphasis added). Widewaters and Liberty Mutual argue that the court must dismiss the Plaintiffs’ action to enforce the Bond to the extent that it represents allegedly unpaid ERISA benefits because ERISA preempts the use of G.L.c. 254, § 1, for recovery of unpaid ERISA benefits.
This matter is one of first impression as Massachusetts courts have not considered this issue since the Legislature amended G.L.c. 254, §1, in 1996, after the Supreme Judicial Court held that ERISA preempted the pre-1996 statute given its express reference to ERISA plans. Chestnut-Adams Ltd. P’ship v. Bricklayers & Masons Trust Funds of Boston, Mass., 415 Mass. 68, 93 (1993),[12] overruled on othergrounds by Central Transp., Inc. v. Package Printing Co., Inc., 429 Mass. 159 (1999). The courts in California and Utah have addressed the question of whether ERISA preempted their states’ mechanic’s lien statutes, and their decisions are instructive. See Betancourt v. Storke Hous. Investors, 31 Cal. 4th 1157, 1167 (2003); Forsberg v. Bovis, 184 P.3d 610, Utah App., 2008 (Apr. 24, 2008).[13]
To determine whether a state statute relates to an employee benefit plan such that ERISA preempts it, the United States Supreme Court “has devised a disjunctive test: ‘A law relate[s] to a covered employee benefit plan . . . if it [1] has a connection with or [2] a reference to such a plan.’ ” Carpenters Local Union No. 26 v. United States Fid. & Guar. Co., 215 F.3d 136, 140 (1st Cir. 2000) (Carpenters) (alterations in original), quoting California Div. of Labor Standards Enforcement v. Dillingham Constr., 519 U.S. 316, 324 (1997) (Dillingham). This court will consider the issue of preemption with respect to the mechanic’s lien statute, G.L.c. 254, §1, as opposed to the dissolution bond statute, G.L.c. 254, §14, because, although the Bond has dissolved the Lien, the Bond and the penal sum recovered from it rely on the propriety of the Lien for their existence.
A. Connection
ERISA preempts state laws that “interfere with the administration of covered employee benefit plans, purport to regulate plan benefits, or impose additional reporting requirements.” Id. at 141. ERISA also preempts “state laws which furnish alternative enforcement mechanisms [because they] threaten the uniformity that Congress labored to achieve ...” Id. at 140. State laws, however, “which touch upon enforcement but have no real bearing on the intricate web of relationships among the principal players in the ERISA scenario (e.g., the plan, the administrators, the fiduciaries, the beneficiaries, and the employer) are not subject to preemption on this basis.” Id. at 141.
Pursuant to the Agreement, B&M was to pay to the Trustees, on the basis of the Union workers’ labor, contributions to certain funds, including a health and welfare fund, pension fund, annuity funds, and apprentice and training funds. The Plaintiffs filed the Lien upon B&M’s failure to satisfy its obligations with respect to both the workers’ actual wages and the fund contributions. Assuming for purposes of this decision that the fund contributions the Agreement required B&M to pay to the Trustees included payments to ERISA-covered employee benefit plans, the penal sum sought in the Lien includes those fund payments as amounts “due for, or on the basis of, the personal labor” of the workers. Id. In this way, the Lien “touch[es] upon enforcement” of B&M’s obligations under the employee benefit plans. Carpenters, 215 F.3d at 141. Enforcement, however, has “no real bearing” on the employee benefit plans as it does not “interfere with the administration” of the plan, “purport to regulate plan benefits, or impose additional reporting requirements.” Id. The Lien has no connection to ERISA plans such that ERISA preempts its enforcement.
In Betancourt, the Supreme Court of California came to a similar conclusion, holding that the mechanic’s lien statute had no connection with ERISA plans because it *’ ‘does not bind ERISA plans to anything! ]’ . . . [or] compel [ERISA] plans to function in a certain way[,]" 31 Cal.4th at 1167 (citations omitted); it “does not regulate the relationship between ERISA plans and participants or beneficiaries”!;] and it applies to cases in which parties “are neither suing or being sued in an effort to enforce the terms of an ERISA plan.” Id. at 1172. In Forsberg, too, the Court of Appeals of Utah recently held that application of the mechanic’s lien statute does “not affect ‘relations among the principal ERISA entities — the employer, the plan, the plan fiduciaries, and the beneficiaries.’ ” 2008 WL1820038, *12 (citation omitted). Although the statute provides remedies to trustees of funds, that connection is not sufficient to require preemption because, “Those remedies are not for ‘misconduct growing out of administration of the ERISA plan.’ ” Id. (citation omitted).
Any connection to employee benefit plans that results from enforcement of G.L.c. 254, §1, is permissible as it does not have a direct connection to ERISA plans. ERISA does not preempt the mechanic’s lien statute on these grounds.

B. Reference

As noted above, the Legislature’s 1996 amendment to G.L.c. 254, §1, eliminated any express reference to ERISA plans. St. 1996, c. 236, §1. Preemption on the grounds of reference, however, does not depend on a statute’s expressly referring to an ERISA plan. Rather, “the ‘reference to’ inquiry will result in preemption ‘[w]here a State’s law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law’s operation.” Carpenters, 215 F.3d at 143 (alteration and ellipses in original), quoting Dillingham, 519 U.S. at 325. With this inquiry, the court considers “the actual operation of the challenged state statute.” Id. at 144.
Section 1 of G.L.c. 254 is indifferent to ERISA coverage, see id. at 145, because it “neither imposes require *426 ments on ERISA plans nor exempts such plans from otherwise applicable statutory provisions . . . [nor does it] dictate the form that a covered plan may take, specify the mode or manner of plan administration, or jeopardize the sort of uniformity that Congress aspired to achieve." Id. at 144. The statute “applies to a sufficiently broad, sufficiently generalized universe of situations without regard to whether any affected person is (or is not) involved with a covered plan.” Id. at 145. Given these characteristics, G.L.c. 254, §1, is a law of general applicability that ERISA does not preempt on these grounds. See Id. at 144-45; see also Chestnut-Adams Ltd. P’shp, 415 Mass. at 93 (“ERISA surely does not preempt judgment-enforcing laws of general application whose effect on ERISA is only incidental”).
In Betancourt, the court also noted that while the absence of an express reference to ERISA did not automatically preclude preemption, ERISA did not preempt the mechanic’s lien statute because it is a law of general application “not ‘specifically designed to affect employee benefit plans.’ "31 Cal.4th at 1166-67, quoting Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 829 (1988); see id. at 1167 n.6 (relying on Carpenters, 215 F.3d at 144-45, for a description of law of general application). Similarly, in Forsberg, the court held that the mechanic’s lien statute does not expressly refer to ERISA plans, and it is a law of general applicability that “functions irrespective of] ] the existence of an ERISA plan.” 2008 WL 1820938, *11 (citation omitted).
ERISA does not preempt G.L.c. 254, §1, on these grounds.
C. Conclusion
ERISA does not preempt G.L.c. 254, § 1, because the statute does not have a connection with or a reference, express or otherwise, to ERISA-covered employee benefit plans. Widewaters and Liberty Mutual’s motion to dismiss Count II of the Consolidated Case to the extent it seeks ERISA benefits will be denied.

ORDER

The defendant Oxford Sutton Development, LLC’s motion to dismiss Count I of the Lead Case (07-537) and defendants Widewaters Construction, Inc., and Liberty Mutual Insurance Co.’s motion to dismiss Count I of the Consolidated Case (07-1935) are ALLOWED, and defendants Widewaters Construction, Inc., and Liberty Mutual Insurance Co.’s motion to dismiss Count II of the Consolidated Case, to the extent it seeks benefits protected by the Employee Retirement Income Security Act, is DENIED.

The court has also drawn facts from the documents the Plaintiffs attached to their complaints. See Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 285 n.6 (2007) ('The only facts appropriate for consideration in deciding a motion to dismiss are . .. those drawn from factual allegations contained within the complaint or within attached exhibits”).

The lien the Plaintiffs recorded pursuant to G.L.c. 254 lists twenty-one individuals who performed the labor.

From the docket it appears that only Oxford moved for removal of the default in the December 4, 2007 motion, so the default is still in effect as to B&M.

This language falls within the recording requirements for “(ljiens under sections two and four ...” G.L.c. 254, §8. A lien under section one, however, incorporates the above-quoted language by requiring “a like statement. . .” Id.

See The American Heritage Dictionary College Edition at 307 (2d ed. 1985) (defining “conditioned” as “[p]repared for a specific action or process”).

 bn Count II of the Lead case the Plaintiffs assert a claim for breach of contract under 29 U.S.C. §185 against B&M. Count II is not dependent on the existence of the Lien and therefore survives Oxford’s motion. See Driscoll v. Boston Edison Co., 25 Mass.App.Ct. 954, 955 (1988) (holding that an action under 29 U.S.C. § 185 “may be brought in a State court, . . . but Federal law controls over inconsistent State law” (internal citations omitted)). In May of 2007, however, the clerk entered a default against B&M pursuant to Mass.R.Civ.P. 55(a), and B&M has not moved for its removal.

Prior to 1996, section 1 of G.L.c. 254 defined a person entitled to assert a lien as “any employee of any employer and the trustee or trustees of any fund or funds, established pursuant to section 302 of the Taft Hartley Law (29 USC 186), providing coverage or benefits to said person.” The Supreme Judicial Court held that the statute’s reference to “section 302 of the Taft-Hartley Law” was a reference to ERISA. Chestnut-Adams Ltd. P’shp, 416 Mass. at 93. “Consequently G.L.c. 254 [was] a law which ‘relate[d] to an employee benefit plan’ for the purposes of the [29 U.S.C.] §1144(a) preemption clause.” Id. With St. 1996, c. 364, §1, the Legislature amended the second paragraph of G.L.c. 254, §1, eliminating the express reference to ERISA plans and defining a person entitled to assert a lien as “[a] person or his assignee, agent, authorized representative or third party beneficiary, to whom amounts are due or for whose benefit amounts are computed and due for, or on the basis of, the personal labor of such person ...” G.L.c. 254, §1.

 California and Utah’s mechanic’s lien statutes are similar to G.L.c. 254, §1. California’s mechanic’s lien statute, set forth at Cal. Civ. §3110, enables “all persons and laborers of every class” to have a lien “upon the property upon which they have bestowed labor . . .” “In 1999, [California’s] Legislature amended the definition of ‘laborer’ (§3089) to include ‘an express trust fund ... to whom a portion of the compensation of a laborer ... is paid by agreement with that laborer or the collective bargaining agent of that laborer.’ ’’ Betancourt, 31 Cal. 4th at 1166 n.5 (second ellipses in original). Utah’s mechanic’s lien statute, set forth at Utah Code Ann. §38-1-3, provides that “all persons performing any services or furnishing or renting any materials or equipment used in the construction, alteration, or improvement of any building or structure . . . shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials or equipment...” The court in Forsberg held that funds to whom employers are to make benefit contributions can act under this statute on behalf of the laborers. 2008 WL 1820938, *3.